

**SIGNED this 28th day of March, 2016.**

_____
**TONY M. DAVIS
UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 14-11583-tmd |
| | § | |
| ADILACE HOLDINGS, INC. | § | |
| | § | CHAPTER 7 |
| Debtor. | § | |

**MEMORANDUM OPINION**

The Trustee has filed a motion to set a deadline for a contract counterparty—Grinberg Asset Holdings—to make an election under section 365(n). Grinberg objected, creating a contested matter. Now, a creditor seeks to intervene in this contested matter because she thinks she knows better than the Trustee how to administer the estate, and because she says the contested matter will affect her separate state-court litigation with Grinberg in California. Should her intervention be allowed even though it will complicate the trial of the contested matter?

1

**I.     Background**

    **A. The Debtor Consents to an Involuntary Petition and then Sells Nearly All its Assets.**

This chapter 7 corporate Debtor formerly owned intellectual property known as Black Ice.[1] Black Ice is some manner of technology used to convert black-and-white film into a digital format. Parties in interest have presented contrasting accounts of what exactly Black Ice entails,[2] but the Court has not yet determined the specifics of the intellectual property. Prior to bankruptcy, the Debtor entered into an agreement with Grinberg regarding the use of Black Ice. This agreement was at least partially memorialized in a two-page written contract.

Subsequently, Grinberg and two other creditors joined to file an involuntary petition for chapter 7 bankruptcy against the Debtor.[3] The Debtor consented to bankruptcy and the case was converted to a chapter 11 case.[4] As contemplated at the time of conversion, the Debtor sold nearly all of its assets to Astral Images, including the Black Ice intellectual property,[5] and the case was thereafter reconverted to chapter 7.[6]

---

[1] *See generally In re Adilace Holdings, Inc.*, No. 14-11583, ECF 147 (order approving the sale of assets, including Black Ice intellectual property).

[2] *Compare, e.g., In re Adilace Holdings, Inc.*, No. 14-11583, ECF 275, at 1-2 (Grinberg's brief in support of its response to the Trustee's motion to set deadline pursuant to section 365(n)) (indicating the Black Ice technology does not include the modifications to a scanner purchased by Grinberg), *with In re Adilace Holdings, Inc.*, No. 14-11583, ECF 277 (Sullivan's response to the motion to set) (indicating that the Black Ice technology includes the modified hardware).

[3] *In re Adilace Holdings, Inc.*, No. 14-11583, ECF 1.

[4] *See In re Adilace Holdings, Inc.*, No. 14-11583, ECF 13 (Debtor's motion to convert the chapter 7 case to a chapter 11 case); *In re Adilace Holdings, Inc.*, No. 14-11583, ECF 40 (order converting case).

[5] *In re Adilace Holdings, Inc.*, No. 14-11583, ECF 84 (amended motion to sell) (detailing the sale of assets); *In re Adilace Holdings, Inc.*, No. 14-11583, ECF 147 (order approving sale); *In re Adilace Holdings, Inc.*, No. 14-11583, ECF 182 (notice of closing).

[6] *See In re Adilace Holdings, Inc.*, No. 14-11583, ECF 212 (order converting case to chapter 7).

### B. The Trustee Moves to Set Deadline for Grinberg to Make a 365(n) Election.

The Trustee asserts that the agreement with Grinberg was an executory contract under which the Debtor licensed the use of Black Ice to Grinberg in exchange for ongoing royalty payments.[7] If executory, the contract was rejected by operation of section 365(d)(1). When an executory contract that licenses intellectual property is rejected, section 365(n) requires the licensee to elect to either treat the contract as terminated or retain its rights to the intellectual property.[8] If the licensee elects to retain its rights, it must continue to pay the royalties due under the contract while waiving any rights to setoff or administrative expenses.[9] With this argument, the Trustee hopes to establish that Grinberg must pay royalties to the Trustee to retain the Black Ice technology.

Grinberg disagrees, arguing that its contract with the Debtor did not license the Black Ice intellectual property but was rather a sale of a Black Ice enabled scanner with ongoing payments for technical support. Under Grinberg's theory, no royalties are owed to the Trustee.

To fund this litigation and to avoid a dispute with the purchaser of the Black Ice technology, the Trustee entered into a settlement agreement with Astral Images (the purchaser of Black Ice). Astral agreed to pay the Trustee's litigation expenses—the Trustee had no other source of funding—and the Trustee and Astral agreed to divide any net recovery arising from Grinberg's use of Black Ice, regardless of whether the cause of action was held by the Trustee or

---

[7] *In re Adilace Holdings, Inc.*, No. 14-11583, ECF 268, at ¶ 2 (Trustee's motion to set deadline for 365(n) election).

[8] 11 U.S.C. § 365(n)(1).

[9] 11 U.S.C. § 365(n)(2)(B)-(C).

Astral.[10] Grinberg objected to this proposed settlement (Sullivan did not), but ultimately came to an agreed order with the Trustee and Astral. The settlement was approved on October 14, 2015.[11]

Then, to tee up the dispute with Grinberg, the Trustee filed his *Motion to Set Deadline for Grinberg Asset Holdings, LLC to make an Election Pursuant to 365(n) of the Bankruptcy Code*[12] ("Motion to Set"), asking the Court to set a deadline for Grinberg to make an election pursuant to section 365(n). Grinberg filed a timely response arguing, among other things, that section 365(n) does not apply.[13]

Susan Sullivan—a creditor with a $2,000,000 contingent claim[14]—filed her own response to the Trustee's motion.[15] Sullivan argued that the contract was not executory when the Debtor entered bankruptcy, meaning that section 365(n) does not apply. According to Sullivan, Grinberg breached its contract with the Debtor in a way that prevented the Debtor from continuing to perform. Under Sullivan's theory, the Debtor had an unconditional right to continued payments from Grinberg. Alternatively, Sullivan asserts that, if the contract was executory and was a license of intellectual property, section 365(n)(1)(A) prevents Grinberg from treating the contract as terminated.[16]

---

[10] As the Trustee's counsel indicated at the hearing on Sullivan's motion to intervene, there may be some additional wrinkles and possible exceptions, but this is the essence of the settlement agreement.

[11] *In re Adilace Holdings, Inc.*, No. 14-11583, ECF 264 (order approving compromise).

[12] *In re Adilace Holdings, Inc.*, No. 14-11583, ECF 268.

[13] *In re Adilace Holdings, Inc.*, No. 14-11583, ECF 274, at ¶ 26.

[14] *In re Adilace Holdings, Inc.*, No. 14-11583, Claim 12-1.

[15] *In re Adilace Holdings, Inc.*, No. 14-11583, ECF 277.

[16] Under section 365(n)(1)(A), the licensee may only treat a contract as terminated by a rejection of an executory contract if "such rejection by the trustee amounts to such a breach as would entitle the licensee to treat such contract as terminated by virtue of its own terms, applicable nonbankruptcy law, or an agreement made by the licensee with another entity . . . ."

Why does Sullivan care? Sullivan first asserts that as an unsecured creditor she wants the estate to collect as much money as possible from Grinberg so her dividend will be larger. But Sullivan also is concerned that an adverse ruling by this Court on the executory contract issue will somehow bind Sullivan adversely in certain California state court litigation pending between Sullivan and Grinberg.

### C. The Trustee Moves to Strike Sullivan's Pleadings.

The Trustee filed his *Motion to Strike Pleadings of Sue Sullivan Pursuant to Bankruptcy Code Sections 558 and 704(A)(1)*[17] ("Motion to Strike"). The crux of the Trustee's argument was that the Bankruptcy Code did not allow Sullivan to challenge the method by which the Trustee decides to pursue the estate's rights. Sullivan argued that section 363(b)(1) and Bankruptcy Rule 2002(a)(2) provide her a right to be heard and Bankruptcy Rule 2018 allows her to seek to intervene in the Motion to Strike.

The Court denied the Motion to Strike to the extent that Sullivan was objecting to the Trustee's decision to pursue his selected legal theory but granted the motion to the extent that Sullivan's pleadings spoke to the merits of the Motion to Set. The Court considered and overruled Sullivan's objection on the basis that the Trustee's decision to pursue a particular legal theory was a matter of business judgment and there was no allegation that the trustee had not made a considered judgment.[18] The Court also denied Sullivan's tangential request to intervene,

---

[17] *In re Adilace Holdings, Inc.*, No. 14-11583, ECF 295.

[18] *In re Adilace Holdings, Inc.*, No. 14-11583, ECF 301.

without prejudice to seeking that form of relief by separate motion,[19] which Sullivan has now filed.[20]

## II. Analysis

### A. Sullivan May Seek to Intervene.

Some authorities state that Bankruptcy Rule 2018 merely implements section 1109[21]—which only applies to cases under chapter 11—while others indicate that Rule 2018 also applies in chapter 7 cases.[22] But even if Rule 2018 was not applicable, according to Rule 9014(c), the Court may direct that Rule 7024 apply in a contested matter. Rule 7024 incorporates Rule 24 of the Federal Rules of Civil Procedure ("FRCP 24"), which in turn allows for intervention.

The standards under Rule 2018 and FRCP 24 overlap.[23] Under FRCP 24(a), intervention by right is proper if a person has an interest in the subject of the action that would be difficult to protect without intervention, unless an existing party adequately represents that interest. The ability of the intervenor to protect its rights and the adequacy of representation are two of the

---

[19] *Id.*

[20] *In re Adilace Holdings, Inc.*, No. 14-11583, ECF 303.

[21] *E.g.*, *Hasso v. Mozasgai (In re La Sierra Fin. Servs.)*, 290 B.R. 718, 728 (B.A.P. 9th Cir. 2002) ("Section 1109(b) is implemented by Rule 2018 . . . ."); Advisory Committee Note to Fed. R. Bankr. P. 2018.

[22] *Pasternak & Fidis, P.C. v. Wilson*, No. GJH-14-01307, 2014 WL 4826109, at *6 (D. Md. 2014) (affirming bankruptcy court ruling applying Rule 2018 to a chapter 7 case); *In re First Interregional Equity Corp.*, 218 B.R. 731, 736 (Bankr. D.N.J. 1997) (applying Rule 2018 to a SIPA case conducted as a chapter 7 case); 9 *Collier on Bankruptcy* ¶ 1108.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("In chapter 12 and 13 cases, and in chapter 7 cases, trustees have a right to be heard; for others, intervention would occur under Rule 2018."); Advisory Committee Note to Fed. R. Bankr. P. 2018 ("[Rule 2018(a)] permits intervention of an entity (see § 101(14), (21) of the Code) not otherwise entitled to do so under the Code or this rule.").

[23] *See, e.g.*, *In re Alterra Healthcare Corp.*, 353 B.R. 66, 71 (Bankr. D. Del. 2006) (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3d Cir. 1994)).

four factors considered under Rule 2018.[24] Under FRCP 24(b), a court may allow intervention if the intervenor has a claim or defense that shares a common question of law or fact with the action. Similarly, under Rule 2018, courts look at whether the intervenor has an economic or similar interest in the matter.[25] The last factor under Rule 2018 is whether allowing intervention will cause undue delay in the proceedings.[26] The decision whether to allow intervention is wholly discretionary under Rule 2018 and under FRCP 24(b), even where each required element is met.[27]

As the largest creditor in this case and a party in state-court litigation involving common questions of law and fact, Sullivan has a discernable interest in the resolution of the Motion to Set. Further, the Trustee does not share Sullivan's interests regarding the California litigation. Thus, the application of either Rule 2018, FRCP 24(a), or FRCP 24(b) here boils down to whether the Trustee adequately represents Sullivan's interest in maximizing her dividend from the estate, whether denying intervention will prejudice Sullivan's rights in her California litigation with Grinberg, and whether allowing intervention will create undue delay.

---

[24] *Pasternak & Fidis*, 2014 WL 4826109, at *6; *In re Pulp Finish 1 Co.*, No. 12-13774, 2014 WL 201482, at *8 (Bankr. S.D.N.Y. 2014); *In re First Interregional Equity Corp.*, 218 B.R. 731, 736 (Bankr. D.N.J. 1997).

[25] *Pasternak & Fidis*, 2014 WL 4826109, at *6; *In re Pulp Finish 1 Co.*, 2014 WL 201482, at *8; *In re First Interregional Equity Corp.*, 218 B.R. at 736.

[26] *Pasternak & Fidis*, 2014 WL 4826109, at *6; *In re Pulp Finish 1 Co.*, 2014 WL 201482, at *8; *In re First Interregional Equity Corp.*, 218 B.R. at 736.

[27] *See Staley v. Harris Cty. Tex.*, 160 F. App'x 410, 414 (5th Cir. 2005) (quoting *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 471 (5th Cir. 1984)); *In re Durango Georgia Paper Co.*, 336 B.R. 594, 596 (Bankr. S.D. Ga. 2005).

### B. The Trustee Adequately Represents Sullivan's Interest in Maximizing the Estate.

Sullivan's interest in maximizing the value of the estate is adequately represented by the Trustee. Section 704(a)(1) of the Bankruptcy Code directs chapter 7 trustees to "collect funds and reduce to money the property of the estate" and to do so "as expeditiously as is compatible with the best interest of parties in interest." Although Sullivan disagrees with the Trustee's chosen legal theory, the Bankruptcy Code gives chapter 7 trustees wide latitude to decide how to execute their mandate if the decision was the result of reasoned judgment.[28]

The Court is convinced that the Trustee is seeking to maximize the value of the estate and has exercised reasoned judgment.[29] The Trustee's decisions have been made in light of, and perhaps constricted by, the settlement agreement with Astral Images, but there is no indication of any ulterior motive. The Trustee had the chance to consider Sullivan's theory of recovery from Grinberg but decided to stay the course. Based on the statements made by the Trustee's special counsel, it seems clear that the Trustee has considered the expected outcomes of different litigation strategies in the context of the funding constraints imposed by the settlement agreement. And as noted by Trustee's counsel, Sullivan did not object or offer to fund the Trustee's costs when approval for the settlement was sought from this Court.

---

[28] *See In re Cooper*, 405 B.R. 801, 812 (Bankr. N.D. Tex. 2009) ("The trustee . . . is expected to be a gatekeeper and to exercise reasonable business judgment in deciding what actions to bring and what are not worth the expense. In theory at least (and hopefully in reality), the trustee is a fair, balanced, and experienced (not to mention bonded, see 11 U.S.C. § 322) official who can be depended upon to exercise good litigation judgment.").

[29] *See In re Adilace Holdings, Inc.*, No. 14-11583, ECF 301 (Order overruling Sullivan's objection to the Trustee's litigation posture).

**C. Sullivan Need Not Participate in the Motion to Set to Protect Her Rights in the California Litigation.**

Although the Trustee does not adequately represent Sullivan's interests in the California litigation, this Court's resolution of the Motion to Set is unlikely to affect Sullivan's rights. Sullivan obliquely argues that there would be collateral estoppel on the issue of whether the agreement between the Debtor and Grinberg was executory. To support this, Sullivan cites decisions by the Supreme Court of Idaho and the Sixth Circuit Court of Appeals.[30] Neither is compelling in light of the California law.[31]

According to the California Supreme Court, collateral estoppel "applies: (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party."[32] It is unlikely that this Court's determination of the Motion to Set would trigger collateral estoppel in California. First, neither the Trustee nor Grinberg has asserted in their pleadings that the agreement was not executory, cutting against the requirement that an issue be "actually litigated." Further, under California law, "a party is adequately represented for purposes of the privity rule if his or her interests are so similar to a party's interests that the later was the former's virtual representative in the earlier action."[33] Although the Trustee adequately

---

[30] *See In re Adilace Holdings, Inc.*, No. 14-11583, ECF 303, ¶ 26 (citing *Farmers Nat'l Bank v. Shirey*, 878 P.2d 762, 767 (Idaho 1994); *Sanders Confectionary Prods. v. Heller Fin., Inc.*, 973 F.2d 474, 480-481 (6th Cir. 1992)).

[31] Indeed, *Sanders Confectionery* did not involve privity between a trustee and a creditor. *See* 973 F.2d at 481-82.

[32] *DKN Holdings LLC v. Faerber*, 352 P.3d 378, 387 (Cal. 2015), *reh'g denied* (Aug. 12, 2015).

[33] *Gottlieb v. Kest*, 141 Cal. App. 4th 110, 150 (2006) (quoting *Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Ass'n*, 60 Cal. App. 4th 1053, 1070-71 (1998) (internal quotation marks omitted); *accord DKN Holdings*, 352 P.3d at 387.

9

represents Sullivan's interests as an unsecured creditor of the estate, the Trustee and Sullivan nonetheless also have divergent interests[34]—the Trustee (properly) does not care how his litigation posture will affect Sullivan's California litigation. That Sullivan *does* care about the effect of this proceeding on the California litigation only means that her interests are not entirely aligned with the Trustee's, and that her intervention will introduce extraneous considerations into this dispute between the Trustee and Grinberg, and create unnecessary delay.

### D. Sullivan's Intervention would Complicate and Delay the Resolution of the Motion to Set.

The Trustee and Grinberg do not want to fight over whether the contract was executory; their chosen battlegrounds are whether the contract licensed the Black Ice intellectual property and whether Grinberg has continued to use the Black Ice intellectual property. If Sullivan intervenes, the Trustee and Grinberg would have to engage on another front, necessitating additional discovery, hearing preparation, and time spent in court. The result would be additional expense and delay in the resolution of the matter.

## III. Conclusion

Because Susan Sullivan does not need to participate in the Motion to Set to protect her interests and allowing her intervention would lead to additional expense and possible delay, her motion to intervene will be denied. A separate order to that effect will issue.

---

[34] Federal courts have found that the interests of Trustee's and individual creditors are not always the same. *In re Hansen*, 368 B.R. 868, 879-80 (B.A.P. 9th Cir. 2007); *cf. The Cadle Co. v. Reed*, 392 B.R. 675, 683 (N.D. Tex. 2008).